## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

RYAN WILLIAMS ET AL                              *       CIVIL ACTION

VERSUS                                           *       NO. 17-4117

JASON BUSH ET AL                                 *       SECTION "L"(1)

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.      FACTUAL AND PROCEDURAL HISTORY

This case arises from conflicts between members of a business partnership. Plaintiffs are two partners, Ryan Williams and Drake Oilfield, Inc. ("Drake Oilfield"), of the limited partnership Drake Oilfield USA, LP ("Drake Oilfield USA"). R. Doc. 1-1 at 3. Defendants are WBT, LLC ("WBT"), the other member of Drake Oilfield USA, and the individual members of WBT, Jason Bush, Lance Baldassaro, and Blair Lucas. R. Doc. 1-1 at 3. This suit was originally filed in Texas but was transferred to this Court. R. Doc. 15.

Plaintiffs claim that Defendants have breached the Drake Oilfield USA Partnership Agreement by failing to provide reliable financial information, combining financial records with those of other entities, failing to participate in required mediation, diminishing value of Plaintiffs' shares, transferring partnership property to other entities, appropriating partnership property, and conspiring to conceal financial information. R. Doc. 1-1 at 3-7. Plaintiffs ask for relief in the form of an order requiring financial accounting of the partnership, disgorgement and return of partnership property, actual damages, exemplary damages, costs of the lawsuit, attorney's fees, and interest. R. Doc. 1-1 at 7-8.

Defendants Jason Bush, Blair Lucas, and Lance Baldassaro respond to the complaint denying Plaintiffs' allegations and citing thirty-seven (37) defenses including: failure to state a

1

claim, lack of standing, failure to join indispensable party, prescription, preemption, and/or bar under statute of limitations or laches, estoppel, unclean hands, and failure to mitigate. R. Docs. 24, 25, 26. Further, Defendants Bush, Lucas, and Baldassaro claim that they are not a party to the Drake Oilfield USA Partnership Agreement and do not owe any obligations under the agreement. R. Doc. 24 at 10; R. Doc. 25 at 10; R. Doc 26 at 10. Defendant WBT also responds to the complaint denying the allegations and citing thirty-seven (37) defenses. R. Doc. 27.

Defendant RSI Global, Inc. ("RSI Global") answers Plaintiffs' complaint denying the allegations and citing thirty-seven (37) defenses. R. Doc. 28. In addition, RSI Global brings a third-party complaint against Drake Oilfield USA. R. Doc. 28 at 11. RSI Global alleges that Drake Oilfield USA obtained a revolving line of credit from Chase Bank under the name of RSI Global. R. Doc. 28 at 12. RSI Global further alleges that Drake Oilfield USA incurred debts in the name of RSI Global totaling $550,000. R. Doc. 28 at 13. RSI Global alleges to have provided credit to Drake Oilfield USA and claims that Drake Oilfield USA must restore that credit to RSI Global. R. Doc. 28 at 13. RSI Global also alleges that Drake Oilfield USA was unjustly enriched by this extension of credit. R. Doc. 28 at 14.

This matter came on for trial without a jury on July 16, 2018. The trial lasted one day. At the conclusion of trial, Defendants moved for partial findings pursuant to Rule 52(c) and for directed verdict and other relief. The Court granted Defendants' motion as stated on the record and dismissed all claims against Defendants Lance Baldassaro and Blair Lucas. The Court also dismissed Plaintiffs' claim for disgorgement finding that there were no profits to disgorge. R. Doc 78 at 177.

Following trial, the Court allowed the parties to make their closing arguments in writing. The Court has received and considered the parties' closing arguments, carefully considered the

testimony of all of the witnesses and the exhibits entered into evidence during the trial, as well as the record. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court hereby enters the following findings of fact and conclusions of law. To the extent that any findings of fact may be construed as conclusions of law, the Court hereby adopts them as such. To the extent that any conclusions of law constitute findings of fact, the Court adopts them as such.

## II.     FINDINGS OF FACT

(1)

Drake Oilfield USA is a limited partnership formed in February 2012 to sell wellhead equipment wholesale in the oil and gas industry.

(2)

Drake Oilfield is the general partner of Drake Oilfield USA and Ryan Williams is the sole shareholder of Drake Oilfield. Drake Oilfield has a 0.01% partnership interest in Drake Oilfield USA. Ryan Williams is a limited partner of Drake Oilfield USA and has a 51.99% partnership interest in Drake Oilfield USA.

(3)

Ryan Williams also runs a business in Canada called Drake Oilfield Supply. This business sells wellhead equipment wholesale in the oil and gas industry to Canadian customers.

(4)

WBT is a limited partner of Drake Oilfield USA and has a 48% partnership interest in Drake Oilfield USA. Jason Bush, Blair Lucus, and Lance Baldassaro are the members of WBT.

(5)

RSI Global is a business that sells pneumatic hydraulic electric controls. This line of business is separate and distinct from the wellhead equipment wholesale business. The

shareholders in RSI Global are the individual defendants, Jason Bush, Blair Lucus, and Lance Baldassaro.

(6)

Drake Oilfield USA began operations in 2012. As a capital contribution, Ryan Williams contributed inventory to be sold by Drake Oilfield USA. As a capital contribution, WBT contributed in-kind services, including staff support and shared utilities, office space, and insurance policies to be used by Drake Oilfield USA. There were never any cash contributions to Drake Oilfield USA by any of the partners.

(7)

WBT utilized the staff and resources of RSI Global to provide the in-kind services required by its capital contribution. RSI Global and Drake Oilfield USA shared employees in the accounting, bookkeeping, data entry, and shipping/receiving departments. Drake Oilfield USA employed its own sales staff. RSI Global and Drake Oilfield USA also shared some expenses, including rent, telephone lines, and other utilities. There were not any formal agreements between the partners regarding how long the in-kind services provided by WBT would continue or how shared expenses would be allocated in the future.

(8)

Plaintiff Williams testified that under the Drake Oilfield USA Partnership Agreement, the general partner was ultimately responsible for making financial decisions, entering relationships with banking institutions, and preparing financial reports. However, he also testified that Defendant Bush was in charge of handling the day-to-day financial operations of Drake Oilfield USA and that he did not provide instructions regarding the limitations of that responsibility.

(9)

After formation of Drake Oilfield USA, the partners held no formal meetings wherein they took minutes or voted on partnership matters. The parties testified that the business of the partnership was managed over the phone and via email with a few informal, in-person meetings.

(10)

In 2012, Drake Oilfield USA obtained two lines of credit at Mississippi River Bank. One line of credit was secured by inventory. The second line of credit was secured by accounts receivable. Drake Oilfield USA was permitted to borrow against a set percentage of inventory and accounts receivable. These lines of credit operated via lockbox. The lockbox procedure is one where monies received from sales of inventory go directly to the bank and are first used to service the line of credit. Any remaining funds are placed in an account to be used by the business. Lockbox lines of credit do not permit the business to borrow additional money if there is no new inventory or accounts receivable. These lines of credit provided the cash used to run the partnership.

(11)

In 2013, Mississippi River Bank declined to renew the Drake Oilfield USA lines of credit. Testimony at trial conflicted regarding when Plaintiff Williams became aware that Mississippi River Bank made this decision. Plaintiff Williams testified that he knew the bank was considering declining the credit in 2013 but did not know the decision had been made until 2015. Plaintiff Williams testified that in 2013 he did not follow up with Mr. Bush regarding the Mississippi River Bank lines of credit. Plaintiff Williams further testified that he did not contact Mississippi River Bank himself regarding the lines of credit. Defendant Bush testified that he discussed Mississippi River Bank's decision to decline the Drake Oilfield USA lines of credit

with Plaintiff Williams and that Plaintiff Williams was sent an email by Mississippi River Bank informing him that it would be declining to renew the lines of credit. Defendant Bush testified that this email was sent to all partners in Drake Oilfield USA. The credible evidence supports the conclusion that Plaintiff was informed that the Mississippi River Bank had declined to renew the lines of credit.

(12)

After the Mississippi River Bank lines of credit were closed, the remaining balances on both lines of credit were paid by RSI Global from its own deposit account at Chase Bank because Drake Oilfield USA did not have sufficient cash to resolve the balances due but there is no credible evidence that the Plaintiff was so informed.

(13)

In 2013, the Drake Oilfield USA inventory and accounts receivable were pledged to a line of credit in the name of RSI Global at J.P. Morgan Chase Bank, N.A. This line of credit identified the Drake Oilfield USA inventory as "Drake Oilfield Supply Christmas tree components." This line of credit also functioned as a lockbox. Testimony at trial conflicted regarding when Plaintiff Williams became aware of this pledge. Plaintiff Williams testified that he was not aware of the pledge at Chase Bank until 2015 and that the partnership did not vote to use the Chase Bank line of credit. However, Defendant Bush testified that he discussed the decision to use the Chase Bank line of credit with Plaintiff Williams and that they reached a verbal agreement regarding the use of the Chase Bank line of credit in 2013.

(14)

After the Drake Oilfield USA inventory and accounts receivable were pledged at Chase Bank, Drake Oilfield USA's financial activities were reported on RSI Global's financial

statements. Defendant Bush testified that this accounting procedure was required by Chase Bank and satisfied Generally Accepted Accounting Procedures ("GAAP"). The financial statements were segregated by using separate accounts in the accounting system and assigning different transaction prefixes to each company.

(15)

Plaintiff Williams testified that he had trouble obtaining information regarding the partnership's financial situation and receiving financial documents from Defendants throughout the life of the partnership. However, Plaintiff Williams also testified that he did not attempt to obtain any financial information directly from the banks in question or the accountants working on behalf of the partnership. Plaintiff Williams also testified that he did not conduct any financial audits or hire accountants to look at the Drake Oilfield USA books.

(16)

After RSI Global stopped banking at Chase, a $550,000 balance remained on the Chase line of credit in the form of a term loan. The remaining Drake Oilfield USA inventory is pledged to this term loan. Chase Bank maintains a lien on the remaining Drake Oilfield USA inventory. There are no remaining Drake Oilfield USA accounts receivable.

(17)

During the course of this litigation, Defendants have provided the Drake Oilfield USA general ledger reports to Plaintiffs. These reports provide information regarding all Drake Oilfield USA transactions. These reports can be used to create balance sheets using complex accounting software.

(18)

Defendants' accounting expert testified that it was possible to use the financial records to separate the activities of Drake Oilfield USA from those of RSI Global. Although it would be possible to create such documents from the general ledger, at trial neither party produced ledgers or balance sheets differentiating between the entries for Drake Oilfield USA and RSI Global. Defendants' accountant testified that she used a method based on percentage of sales to allocate the shared expenses between the two businesses.

(19)

Plaintiffs did not produce any experts to evaluate or testify regarding valuation of inventory or partnership equity, accounting practices, or cause of failure of the business.

(20)

The operations of Drake Oilfield USA ceased in 2016. Drake Oilfield USA never produced any profit. The Court finds that the business of Drake Oilfield USA failed as a result of the downturn in the oil and gas industry. All parties took risks and made poor business decisions regarding Drake Oilfield USA. Any losses suffered by the parties were the result of their own actions or inactions in managing Drake Oilfield USA rather than the specific actions of any one party.

III.     CONCLUSIONS OF LAW

(1)

Federal Courts are courts of limited jurisdiction. "A party may neither consent to nor waive federal subject matter jurisdiction." *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999). Plaintiffs' action is brought pursuant to theories under both Delaware and Louisiana laws. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), which provides original jurisdiction over citizens of different states when the amount in

controversy exceeds $75,000, exclusive of interests and costs.  In this case, neither the domicile of the parties nor the amount in controversy is in dispute.  Venue is not contested.

(2)

The partnership agreement at issue in the equitable accounting, breach of fiduciary duty, and breach of contract claims states that it is subject to the laws of the state of Delaware. The alleged actions and/or omissions at issue in the conversion and conspiracy claims occurred in the state of Louisiana. A federal court sitting in diversity must apply the substantive law of the state in which it sits. *See Erie v. Tompkins*, 304 U.S. 64, 71–77 (1938). The state of Louisiana would apply Delaware law to interpret the partnership agreement at issue and Louisiana law to determine the conversion and conspiracy claims. Thus, the law of the states of Delaware and Louisiana are the substantive laws applicable to this case.

(3)

Neither party has requested a jury trial in this matter, and as such, this matter is appropriately being tried to the bench as opposed to a jury.

(4)

Plaintiffs failed to provide evidence at trial of Defendants' obligation to provide an accounting for Drake Oilfield USA. Rather, Plaintiff Williams admitted that the ultimate responsibility for any financial accounting was held by Plaintiff Drake Oilfield as the general partner of Drake Oilfield USA. Yet, Plaintiff Drake Oilfield chose to ignore that responsibility and made little or no effort to oversee the financial affairs of Drake Oilfield USA. Additionally, Defendants have provided all Drake Oilfield USA financial records in their possession to Plaintiffs, but Plaintiffs have made no effort to have these records reviewed by an accountant.

Accordingly, the Court finds that Plaintiffs are not entitled to any additional financial accounting of the Drake Oilfield USA partnership from Defendants.

(5)

Louisiana law recognizes a cause of action for conversion. *See Chrysler Credit Corp. v. Whitney Nat'l Bank*, 51 F.3d 553, 557 (5th Cir.1995). Conversion occurs under the following circumstances:

> 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel.

*Dual Drilling Co. v. Mills Equip. Inv., Inc.*, 721 So.2d 853, 857 n. 3 (La. 1998).

(6)

The Supreme Court of Louisiana has distinguished conversion in Louisiana law from the common law tort of conversion because Louisiana law does not require a showing of intentional wrong. *See id.*; *Dixie Sav. & Loan Ass'n v. Pitre*, 751 So.2d 911, 921–22 (La. App. 5 Cir. 1999), writ denied, 751 So.2d 855 (La. 1999). The intent required for conversion is an intent to exercise a dominion or control over chattels that is in fact inconsistent with the plaintiff's rights. *See Louisiana State Bar Ass'n v. Hinrichs*, 486 So.2d 116, 121 (La. 1986). A mistake of law or fact does not relieve the defendant of responsibility for the conversion. *See id.*

(7)

The Court concludes that Plaintiffs did not prove at trial that possession of either the Drake Oilfield USA inventory or Drake Oilfield USA accounts receivable were transferred to RSI Global. Plaintiff Williams testified that the Drake Oilfield USA partnership never voted to transfer the property. No documentation was provided demonstrating transfer of the property.

Defendant Bush testified that RSI Global treated the Drake Oilfield USA inventory and accounts receivable as separate property owned by Drake Oilfield USA. This separate treatment was confirmed by Chase Bank documents listing the inventory as belonging to Drake Oilfield USA. No credible evidence was presented at trial proving that RSI Global used the Drake Oilfield USA inventory, accounts receivable, or lines of credit secured by this property for its own business. In fact, the evidence supports the conclusion that the purpose of joining the accounts was to assist Drake Oilfield USA in securing a credit line. Furthermore, no credible evidence was presented at trial showing that RSI Global acted with any intent to exercise dominion or control over the property that was inconsistent with the rights of Drake Oilfield USA. Furthermore, the inventory has remained in the same physical location. Accordingly, the Court finds that Plaintiffs failed to prove conversion of the Drake Oilfield USA inventory and accounts receivable.

(8)

Plaintiffs allege that Defendant WBT breached its fiduciary duty pursuant to the Drake Oilfield USA Partnership Agreement. The Drake Oilfield USA partnership is a Delaware partnership and the Partnership Agreement contains language stating that it will be governed by the laws of the State of Delaware.

(9)

At trial, Plaintiff Williams testified that the breach of fiduciary duty claim is based on 1) the alleged transfer of Drake Oilfield USA inventory by WBT to RSI Global and 2) the alleged transfer of Drake Oilfield USA accounts receivable by WBT to RSI Global. However, as discussed above, Plaintiffs have failed to prove that either the inventory or the accounts receivable were transferred to RSI Global. Accordingly, Plaintiffs have also failed to prove breach of fiduciary duty. If any duty was violated it was that owed by Drake Oilfield, the general

partner (wholly owned by Plaintiff Williams) in failing to properly oversee the management of Drake Oilfield USA.

(10)

Plaintiffs allege that Defendant WBT breached its contract, the Drake Oilfield USA Partnership Agreement. At trial, Plaintiff Williams testified that the breach of contract claim is based on 1) the alleged transfer of Drake Oilfield USA inventory by WBT to RSI Global and 2) the alleged transfer of Drake Oilfield USA accounts receivable by WBT to RSI Global. However, as discussed above, Plaintiffs have failed to prove that either the inventory or the accounts receivable were transferred to RSI Global. Accordingly, Plaintiffs have also failed to prove breach of contract.

(11)

Plaintiffs have also brought a conspiracy claim. Louisiana Civil Code Article 2324(A) states that "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." Under this article, an independent cause of action for civil conspiracy does not exist; rather, the actionable element of article 2324 is the intentional tort the conspirators agreed to commit and committed in whole or in part causing plaintiff's injury. *See Ross v. Conoco, Inc.*, 02-0299, pp. 7-8 (La. 10/15/02), 828 So.2d 546, 552 (citing *Butz v. Lynch*, 97-2166, p. 6 (La. App. 1 Cir. 4/8/98), 710 So.2d 1171, 1174); *Ryhce v. Martin*, 173 F. Supp. 2d. 521, 535 (E.D. La. 2001); *Jefferson v. Lead Indus. Ass'n, Inc., et al.*, 930 F. Supp. 241 (E.D. La. 1996). Simply stated, the unlawful act is the tortious conduct. *Chrysler Credit Corp. v. Whitney Nat. Bank*, 51 F.3d 553, 557 (5th Cir. 1995).

(12)

As discussed above, Plaintiffs did not submit sufficient evidence at trial to prove that Defendants committed any tortious actions. Furthermore, Plaintiffs failed to submit any evidence of conspiracy. Accordingly, Plaintiffs have failed to prove conspiracy.

(13)

RSI Global filed a third-party complaint against Drake Oilfield USA. RSI Global's first claim is for payment of a thing not due. "A person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it." La. Civ. Code art. 2299. "A thing is not owed when it is paid or delivered for the discharge of an obligation that does not exist." La. Civ. Code art. 2300.

(14)

"A person who paid the debt of another person in the erroneous belief that he was himself the obligor may reclaim the payment from the obligee. The payment may not be reclaimed to the extent that the obligee, because of the payment, disposed of the instrument or released the securities relating to the claim. In such a case, the person who made the payment has a recourse against the true obligor." La. Civ. Code art. 2302. "To recover under article 23[02][1] a plaintiff must establish: (1) the existence of a valid debt; (2) that he paid that debt; (3) that it was a debt of another person; and (4) that the payment was made by mistake." *Cont'l Serv. Life & Health Ins. Co. v. Grantham*, 811 F.2d 273, 275 (5th Cir. 1987).

---

[1] "Article 2302 is new. It is based on Article 2310 of the Louisiana Civil Code of 1870." La. Civ. Code art. 2302, comment (a).

(15)

Here, RSI Global has established through testimony and documentation the existence of valid debt, such as the debt to Chase Bank, suppliers, and insurance providers. RSI Global has also established that it paid that debt. However, RSI Global has not provided sufficient evidence to prove that the debt paid was the debt of another person, namely Drake Oilfield USA. Particularly, the Chase Bank loan was always in the name of RSI Global. As for the other allegedly owed Drake Oilfield USA expenses allegedly paid by RSI Global, RSI Global failed to provide documentation or testimony sufficient to demonstrate that any specific expenses were owed by Drake Oilfield USA. No evidence was submitted of an agreement, informal or otherwise, between Drake Oilfield USA and RSI Global regarding payment of "shared expenses" and no invoices were provided between the two parties. Accordingly, RSI Global has failed to provide sufficient evidence to establish a claim for payment of a thing not due.

(16)

RSI Global also brings a claim in the alternative for unjust enrichment. Under Louisiana law, a claim for unjust enrichment is grounded "on [the] principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another." La. Civ. Code art. 2055. To prove unjust enrichment the claimant must demonstrate 1) enrichment of the defendant, 2) impoverishment of the claimant, 3) "the defendant's enrichment and the plaintiff's impoverishment [are] be causally connected," 4) "neither the enrichment nor the impoverishment [are] justified,"[2] and 5) that there is no other remedy at law. *Fidelity & Deposit Co. of Md. v. Smith*, 730 F.2d 1026, 1030 (5th Cir. 1984); *Minyard v. Curtis*

---

[2] The Fifth Circuit has held that this is the most important element and that "[j]ustification can be supplied by a provision of law or contract that permits either the enrichment or the impoverishment." *Fidelity & Deposit Co. of Md. v. Smith*, 730 F.2d 1026, 1030 (5th Cir. 1984).

*Prods., Inc.*, 205 So.2d 422, 432 (La. 1967). "The impoverishment element is met only when the factual circumstances show that the impoverishment was not a result of the plaintiffs' own fault or negligence or was not undertaken at his own risk." *Gray v. McCormick*, 663 So.2d 480, 487 (La. App. 3 Cir. 10/18/95); *see also Tandy v. Pecan Shoppe of Minden, Inc.*, 785 So.2d 111 (La. App. 2 Cir. 4/4/01) (holding that plaintiff had not demonstrated the impoverishment element because his actions were "unilateral and voluntary"). The evidence supports the conclusion that RSI Global voluntarily made the payments without the knowledge of the Plaintiffs.

(17)

Furthermore, here, RSI Global failed to prove at trial that it was impoverished. The testimony at trial showed that there was no agreement between Drake Oilfield USA and RSI Global regarding use of RSI Global's Chase Bank credit line, payment of expenses for shared services, payment of expenses by RSI Global for expenses allegedly incurred only by Drake Oilfield USA, or any other support allegedly provided by RSI Global. Rather, Defendant Bush's testimony suggests that the members of RSI Global, acting ultimately also as members of Drake Oilfield USA, unilaterally and voluntarily attempted to maintain the business of Drake Oilfield USA. This choice was made as a business decision, hoping that Drake Oilfield USA would eventually be able to make money. RSI Global took on the risk of these voluntary decisions without agreements with Drake Oilfield USA and cannot now demonstrate that it was impoverished. Accordingly, the Court finds that RSI Global has not proven unjust enrichment.

(18)

In conclusion, the Court finds that neither party was able to prove its claims against the other at trial. Therefore, all remaining claims brought by Plaintiffs Ryan Williams and Drake Oilfield Inc. against Defendants RSI Global, Inc, WBT, LLC, and Jason Bush are hereby

15

dismissed, each party to pay their own costs. All claims brought by Defendant RSI Global, Inc.

against Drake Oilfield USA are hereby dismissed, each party to pay its own costs.


New Orleans, Louisiana, this 20th day of August, 2018.


UNITED STATES DISTRICT JUDGE